**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 13, 2016.**

_Craig A. Gargotta_

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § § | **Case No. 16-50778** |
| **SANJEL (USA) INC.**, *et al.*, [1] | § § | **(Chapter 15)** |
| Debtors in a foreign proceeding. | § § § | **JOINTLY ADMINISTERED** |

**ORDER (A) RECOGNIZING AND GIVING FULL FORCE AND EFFECT TO THE CANADIAN COURT'S ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS RELATED TO CERTAIN CHAPTER 15 DEBTORS' BUSINESSES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) APPROVING THE SALE OF ASSETS LOCATED IN THE UNITED STATES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, AND (C) GRANTING RELATED RELIEF (TERRACOR BUSINESS)**

The Court has considered the *Joint Motion of the Monitor and Certain of the Chapter*

---

[1] The debtors in these jointly administered Chapter 15 cases are as follows: Sanjel Corporation ("Sanjel Corp."), Suretech Group Ltd. ("Suretech"), Sanjel Energy Services (USA) Inc. ("Sanjel Energy"), Sanjel (USA) Inc. ("SUSA"), Suretech Completions (USA) Inc. ("Suretech USA"), Sanjel Capital (USA) Inc. ("Sanjel Capital"), Terracor Group Ltd. ("Terracor Group"), Terracor (USA) Inc. ("Terracor USA"), Terracor Resources (USA) Inc. ("Terracor Resources"), Terracor Logistics (USA) Inc. ("Terracor Logistics"), and Sanjel Canada Ltd. (collectively, the "Chapter 15 Debtors").

4821-6125-7783.7
113232\000001
10/13/2016 11:10 AM

*15 Debtors For Entry of an Order (A) Approving the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Recognizing and Giving Full Force and Effect to the Order of the Canadian Court Approving the Sale of Such Assets and (D) Granting Related Relief (Terracor Business)* (the "***Motion***") filed by PricewaterhouseCoopers Inc. as the court-appointed Monitor and foreign representative (the "***Foreign Representative***") and certain of the Chapter 15 Debtors seeking an order recognizing the ***Canadian Sale Order***[2] entered in the pending Canadian insolvency proceedings for the Vendors[3] under the Companies' Creditors Arrangement Act (the "***Canadian Proceedings***") concerning the sale (the "***Transaction***") of the Purchased Assets (as defined in the APA (as defined below)) (the "***Purchased Assets***") to OmniTrax Logistics Services, LLC or its designee or nominee (the "***Purchaser***") pursuant to the terms and conditions of that certain *Asset Purchase Agreement,* dated as of September 1, 2016 (the *Asset Purchase Agreement,* all exhibits, schedules, and agreements ancillary thereto, the "***APA***").

The Court finds that it has jurisdiction to hear and determine the Motion, this is a core proceeding, and venue is proper in this District and in this Court. The Court further finds that notice was properly given under the circumstances and that no party in interest made any response in opposition to the Motion or, if so, the relief requested in any such response was denied. In particular, the Foreign Representative and the Chapter 15 Debtors have served timely and proper notice to each of the counterparties to the Assumed Contracts as set forth in

---

[2] All capitalized terms herein shall have the meaning ascribed to them in the Motion and/or the APA, as appropriate.

[3] The "Vendors" are Terracor Resources (USA) Inc., Terracor Logistics (USA) Inc., Terracor (USA) Inc., Terracor Group Ltd., Sanjel Corporation and Sanjel Canada Ltd., which are Chapter 15 Debtors.

4821-6125-7783.7
113232\000001
10/13/2016 11:10 AM

**Exhibit D** to the Motion, in the Revised Notice of Designation of Additional Contracts (the "Revised Notice of Designation") [Docket No. 503] and in the Second Notice of Designation of Additional Contracts (the "Second Notice of Designation") (collectively, the "*Contract Counterparties*" or, individually, a "*Contract Counterparty*") that (i) the Foreign Representative and the Vendors may seek to assume and assign to the Purchaser the Assumed Contracts on the Closing Date and (ii) the amount of the relevant Cure Costs (as also set forth in **Exhibit D** to the Motion and/or in the Revised Notice of Designation) for each Assumed Contract. Each of the Contract Counterparties has had an opportunity to object to the Cure Costs as set forth in the Motion and to the potential assumption and assignment to the Purchaser of each applicable Assumed Contract. The service of such notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of establishing a Cure Cost for any particular Assumed Contract. Additionally, any party with any purported interest in any of the Purchased Assets was provided with notice of the Motion and proposed sale free and clear of interests thereunder and service of such notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given.

Based upon all evidence submitted and argument at the hearing on the Motion, including all declarations and affidavits filed and the proffer or testimony of witnesses, as well as the record of and docket filings in these cases, of which the Court takes judicial notice, the Court further finds that the relief requested in the Motion is in the best interest of the Chapter 15 Debtors, their creditors, and all other parties in interest and should be granted:

3

THE COURT HEREBY ORDERS THAT:[4]

1.     The relief requested in the Motion is GRANTED.  The Court specifically finds that the Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code.  The Foreign Representative and the Chapter 15 Debtors are authorized and directed to take all actions necessary or appropriate to effect the relief granted pursuant to this Order, including effecting non-material modifications or amendments to the Transaction Documents with the consent of the Foreign Representative, Vendors and Purchaser.

2.     All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court at the hearing or by stipulation filed with this Court or as otherwise provided in this Order are hereby overruled on the merits.

3.     The Canadian Sale Order, attached hereto as **Exhibit A**, and all of its terms is hereby recognized and given full force and effect in the United States.

4.     The Transaction is approved in all respects under 11 U.S.C. § 363 and 365 with respect to all Purchased Assets (including the Assumed Contracts) in the United States as the Foreign Representative and Vendors have shown sound business reasons and exercised appropriate business judgment for the sale of the Purchased Assets to Purchaser.

5.     In light of the recognition of and determination to give full force and effect to the Canadian Sale Order in the United States and approval of the Transaction under Section 363 of the Bankruptcy Code as provided herein, the Foreign Representative and the Vendors are

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the findings of fact set forth herein constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law set forth herein constitute findings of fact, they are adopted as such.

4

authorized and directed to consummate the Transaction pursuant to the terms and conditions of the APA, the Canadian Sale Order and this Order, which Transaction, upon the Foreign Representative's receipt of the Purchase Price, shall convey to Purchaser, and Purchaser shall thereafter be vested with, all rights, title and interests of the Vendors in and to the Purchased Assets free and clear of any and all liens, encumbrances, claims (including, but not limited to, any and all claims pursuant to any successor or successor-in-interest liability theory), and other interests of any kind, except as otherwise set forth expressly in the APA. The Court specifically finds that with respect to each of the Purchased Assets that one or more of the standards under Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

6.      In light of the recognition of and determination to give full force and effect to the Canadian Sale Order in the United States and approval of the Transaction under Section 363(f) of the Bankruptcy Code, all liens, claims, encumbrances and interests shall attach solely to the proceeds of the Transaction (net of taxes, fees and expenses incurred in effecting the Transaction) received by the Foreign Representative with the same validity, priority, force, and effect that they now have as against the Purchased Assets, and subject to any claims and defenses the Foreign Representative or the Chapter 15 Debtors may possess with respect thereto. The Monitor will hold such proceeds and is authorized to deal with them in accordance with further orders of the Canadian Court.

7.      All persons or entities other than the Vendors, if any, that are in possession of some or all of the Purchased Assets and any certificates of title, instruments or other indicia of title representing or evidencing ownership of the Purchased Assets which have been pledged as security in respect of the Purchased Assets (the "*Indicia of Ownership*") are directed to surrender

5

4821-6125-7783.7
113232\000001
10/13/2016 11:10 AM

possession of such Purchased Assets and Indicia of Ownership. The Foreign Representative and the Vendors shall exercise commercially reasonable efforts to assist the Purchaser in assuring that all persons or entities in possession of some or all of the Purchased Assets will surrender possession of the Purchased Assets and Indicia of Ownership to (a) the Vendors before the Closing Date or (b) the Purchaser on or after the Closing Date. All persons or entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Foreign Representative and the Vendors to sell and transfer the Purchased Assets to Purchaser in accordance with the terms of the APA and this Order.

8.      Except as otherwise provided for in this Order, the Canadian Sale Order, or the APA, the Purchaser shall not have any liability or other obligation of the Vendors arising under or related to any of the Purchased Assets. All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding liens, claims or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Vendors, the operation of the Vendors' business, or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, any of its affiliates, any of the foregoing's successors, assigns, or properties, or the Purchased Assets, such persons' or entities' liens, claims or any other interests in and to the Purchased Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other

6

proceeding against the Purchaser, any of its affiliates or any of the foregoing's successors, assigns, or properties, or the Purchased Assets; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, any of its affiliates or any of the foregoing's successors, assigns, or properties, or the Purchased Assets; (c) creating, perfecting, or enforcing any liens, claims or interests against the Purchaser, any of its affiliates or any of the foregoing's successors, assigns, or properties, or the Purchased Assets; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser, any of its affiliates, or any of the foregoing's successors, assigns, or properties or the Purchased Assets; (e) commencing or continuing any action, in any manner or place, that does not comply with or is inconsistent with the provisions of this Order, the Canadian Sale Order, the other orders of the Court, or the APA or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

9.    Nothing in this Order or the APA releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability (including but not limited to for reclamation and mitigation and any associated long-term protection requirements) to a governmental unit arising from or related to the enforcement of any environmental law or regulation that any entity would be subject to as the owner or operator of property from and after the date of the closing of the Transaction. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal

4821-6125-7783.7
113232\000001
10/13/2016 11:10 AM

requirements and approvals under police or regulatory law. Notwithstanding the foregoing, nothing herein shall be a determination that the Purchaser is a responsible person or an owner or operator with respect to any environmental law or regulation or preclude Purchaser from claiming any innocent landowner, bonafide prospective purchaser or other applicable defenses to liability available to Purchaser under applicable law.

10.    The Transaction is undertaken by Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transaction, unless such authorization and consummation of the Transaction are duly stayed pending such appeal. Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

11.    The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order and the Canadian Sale Order is integral to the Transaction and is in the best interests of the Chapter 15 Debtors, their estates, creditors, and other parties in interest, and represents the Vendors' reasonable exercise of sound and prudent business judgment. Except as otherwise provided in this Order, the respective cure amounts set forth on Exhibit "D" attached to the Motion or in the Revised Notice of Designation or in the Second Notice of Designation constitute the sole amounts necessary under Bankruptcy Code §§ 365(b)(1)(A) and (B) and 365(f)(2)(A) to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Contracts (the "***Final Cure Costs***").

12.    There was no objection to the assignment of the Assumed Contracts or such

8

objections were over-ruled. The Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Contracts pursuant to Bankruptcy Code § 365(b)(1)(C).

13. Pursuant to Bankruptcy Code §§ 105(a) and 365, and subject to and conditioned upon the closing of the Sale, the Vendors' assumption and assignment to the Purchaser of the Assumed Contracts, and the Purchaser's assumption of the Assumed Contracts on the terms set forth in the APA (including without limitation the right of the Purchaser to remove one or more Assumed Contracts from the list of Assumed Contracts under the APA prior to the Closing Date), is hereby approved, and the requirements of Bankruptcy Code § 365(b)(1) with respect thereto are hereby deemed satisfied.

14. The Vendors are authorized and directed in accordance with Bankruptcy Code §§ 105(a), 363, and 365 to (a) assume and assign to the Purchaser, effective upon the Closing Date and subject to the terms of the APA and the Purchaser's rights thereunder, the Assumed Contracts free and clear of all liens, encumbrances, claims or other interests of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Purchaser, as provided in the APA.

15. Subject to the Purchaser's right under the APA to remove, prior to the Closing Date, an Assumed Contract from the list of Assumed Contracts to be assumed and assigned to the Purchaser under the APA, the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type

9

described in Bankruptcy Code §§ 365(b)(2) and (e)) that prohibits, restricts, or conditions such assignment or transfer. Pursuant to Bankruptcy Code § 365(k), the Vendors shall be relieved from any further liability with respect to any Assumed Contract after such Assumed Contract is assumed and assigned to the Purchaser.

16.     Effective on the Closing Date, subject to the payment of Final Cure Costs, all defaults or other obligations of the Vendors under the Assumed Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code § 365(b)(2)), whether monetary or non-monetary, shall be deemed cured in full, and all requirements under Bankruptcy Code § 365 for the assumption and assignment of such Assumed Contracts to the Purchaser shall be deemed satisfied.

17.     The Final Cure Costs are hereby deemed to be finally determined, and no Contract Counterparty may challenge, object to, or deny the validity and finality of the Final Cure Costs designated as payable with respect to its Assumed Contract, and such Final Cure Costs, when paid, shall completely revive any Assumed Contract to which they relate. No sections or provisions of any Assumed Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the Contract Counterparty to the Assumed Contracts shall have any force and effect with respect to the assignments authorized by the Canadian Sale Order and this Order. Such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code § 365(f) and are otherwise unenforceable under Bankruptcy Code § 365(e). No assignment of any Assumed Contract pursuant to the terms of the APA shall in any respect constitute a default under any Assumed Contract. The Contract

4821-6125-7783.7
113232\000001
10/13/2016 11:10 AM

Counterparty to each Assumed Contract shall be deemed to have consented to such assignment under Bankruptcy Code § 365(c)(1)(B), and the Purchaser shall enjoy all of the Vendors' rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such Contract Counterparty's written consent to the assumption or assignment thereof.

18.     All Contract Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Purchaser, and shall not charge the Vendors, the other Chapter 15 Debtors, the Foreign Representative, or the Purchaser for any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers of the Assumed Contracts to the Purchaser.

19.     The failure of the Vendors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such term(s) or condition(s) or of the Vendors' and Purchaser's rights to enforce every term and condition of such Assumed Contract.

20.     All Contract Counterparties are forever barred and enjoined from raising or asserting against the Purchaser any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment arising under or related to the Assumed Contracts existing as of the Closing Date or arising by reason of the closing of the Transaction, except for the Final Cure Costs.

21.     Nothing contained in any order of any type or kind entered in (a) these Chapter 15 cases, (b) any subsequent Chapter 11 or Chapter 7 case into which any such Chapter 15 cases

11

may be converted, or (c) any related proceeding subsequent to entry of this Order, shall affect, conflict with or derogate from the provisions of the APA, the terms of the Canadian Sale Order, or the terms of this Order. To the extent this Order is inconsistent with any prior order in these Chapter 15 cases, the terms of this Order shall govern. To the extent that this Order is inconsistent with the Canadian Sale Order, the terms of the Canadian Sale Order shall govern.

22.    This Order shall be effective immediately upon entry, and any stay periods in Bankruptcy Rules 7062, 6004(h), 6006(d) or otherwise, are expressly waived. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding anything to the contrary, including Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs that this Order constitute an entry of judgment.

23.    The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any provisions of or remedies under the APA, the Canadian Sale Order, or this Order.

24.    This Order is binding upon and governs the acts of all persons, entities, and governmental departments or agencies, including the Foreign Representative, the Chapter 15 Debtors, their creditors, any holders of liens, claims, encumbrances and/or interests against or in the Chapter 15 Debtors or against or on all or any portion of the Purchased Assets, any parties in interest, the Purchaser, and any trustees, examiners, responsible officers, estate representatives, or similar entities for any of the Chapter 15 Debtors, if any, subsequently appointed in any of

12

the Chapter 15 Debtors' cases or upon a conversion to Chapter 11 or Chapter 7 under the Bankruptcy Code of any of the Chapter 15 Debtors' cases, and all of their respective successors and assigns.

25.     Subject to the provisions of section 4.1 of the APA regarding the 2016 Property Tax Adjustment Amount (as defined in the APA) and reduction of the Cash Amount (as defined in the APA) as provided for in section 4.1(b) of the APA, Purchaser shall be responsible for and timely pay the 2016 Property Taxes (as defined in the APA) related to the Purchased Assets, and the tax liens securing the 2016 Property Taxes are deemed to be Permitted Encumbrances (as defined in the APA).

26.     Western Building Center has asserted a lien against certain property which is a Purchased Asset (the "***Western Building Center Lien***").   Conditioned upon execution by Western Building Center of a release of the Western Building Center Lien in form and substance satisfactory to Vendors, the Foreign Representative and Purchaser, Western Building Center shall be paid $6,770.30 in full and complete satisfaction of any and all claims of Western Building Center including, without limitation, the Western Building Center Lien.

27.     The Purchased Assets includes the rights to purchase or otherwise acquire property (the "***Agency Contracts***") owned by Michael Kappen, Shawn Jensen, Travis Hale, L&S Investments, Timothy Shaw or the Northern Family (each an "***Agency Contract Seller***"). Re/Max Homes & Hills Realty, Inc. ("***Re/Max***") and Terracor (USA) Inc. are parties to a WB-36 Buyer Agency/Tenant Representation Agreement between Terracor (USA) Inc. as Buyer and Re/Max as Broker dated August 21, 2014 (the "***Agency Agreement***"), [which was admitted as Exhibit 16]. Re/Max asserts that cure obligations related to the Agency Contracts includes the

4821-6125-7783.7
113232\000001
10/13/2016 11:10 AM

Success Fee (as defined in the Agency Agreement). The Vendors, Re/Max and the Foreign Representative agree that Re/Max shall be paid $280,000 (the "*Agency Contract Cure Claim*") in full and final satisfaction of any and all claims under the Agency Agreement or any other cure claims under the Agency Contracts. Upon payment to Re/Max of the Agency Contract Cure Claim, Re/Max will be deemed to have released and waived any liens and shall affirmatively withdraw any and all Notices of Interest filed by or on behalf of Re/Max against any Purchased Asset. Nothing herein shall constitute an assumption by Purchaser of any liabilities or obligations under the Agency Agreement. For avoidance of doubt, Re/Max shall not be entitled to any fees or have any claim against Vendors, Purchaser or any successor or assignee of Purchaser in the event that Purchaser or any party acting by or though Purchaser, exercises its rights to purchase or otherwise acquire property pursuant to the Agency Contracts or from an Agency Contract Seller. Re/Max is the broker for various Sellers of Real Property who have entered into contracts with Terracor (USA) Inc. which contracts are being assigned or transferred by this Order. By virtue of the broker agreements with the Sellers, Re/Max has filed a Real Estate Broker's Lien on the Real Property records in Wisconsin to protect its broker's interests. Nothing in this Order shall be construed to affect, modify, amend or nullify Re/Max's Seller's Broker Agreement or its broker lien, and the provisions of this Order are entered without prejudice to Re/Max's rights under its non-debtor broker's agreements or its statutory lien rights related thereto.

28.     Louisville Dryer Company ("*Louisville Dryer*") filed a timely objection to the Cure Costs related to the assumption and assignment of Purchase Order dated December 7, 2011 (the "*Louisville Dryer Purchase Order*"). The Vendors and the Foreign Representative agree

14

that the Final Cure Costs for Louisville Dryer Purchase Order is $70,015.00. Louisville Dryer also objected to the Cure Costs related to the assumption and assignment of the Monthly Storage Agreement (the "***Louisville Dryer Storage Agreement***"). Vendors and the Foreign Representative agree that the Cure Costs associated with the Louisville Dryer Storage Agreement are $13,500. Further, Vendors, the Foreign Representative, Louisville Dryer and Purchaser agree that the amount of $1,500.00 shall be due and payable for each month beginning on November 1, 2016. After November 1, 2016, for a period of three (3) months, the Purchaser shall remove the dryer system from Louisville Dryer's premises within 30 days thereafter, unless, prior to the expiration of such three month period, the Purchaser and Louisville Dryer, otherwise agree in writing.

29.    No bulk sales law or similar law of any state or other jurisdiction applies in any way to the Transaction.

4821-6125-7783.7
113232\000001
10/13/2016 11:10 AM

30.     This Court shall retain jurisdiction to interpret, implement, and enforce the terms

and provisions of this Order, and to adjudicate disputes concerning or relating to this Order.

###

Submitted by:

Deborah D. Williamson
State Bar No. 21617500
dwilliamson@dykema.com
Patrick L. Huffstickler
State Bar No. 10199250
phuffstickler@dykema.com
Patrick B. McMillin
State Bar No. 24088035
pmcmillin@dykema.com
DYKEMA COX SMITH
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

**COUNSEL FOR CANADIAN MONITOR**
**AND FOREIGN REPRESENTATIVE**

4821-6125-7783.7
113232\000001
10/13/2016 11:10 AM

and

**VINSON & ELKINS L.L.P.**
Harry A. Perrin
State Bar No. 15796800
John E. West
State Bar No. 21202500
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
(713) 758-2222
(713) 758-2346 (Fax)
hperrin@velaw.com

Steven M. Abramowitz
New York Bar No. 2431724
David S. Meyer
New York Bar No. 4576344
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
(212) 237-0000
(212) 237-0100 (Fax)
sabramowitz@velaw.com

Marisa Secco
State Bar No. 24060583
2801 Via Fortuna, Suite 100
Austin, TX 78746-7568
(512) 542-8781
(512) 236-3243 (Fax)
msecco@velaw.com

**COUNSEL FOR THE CHAPTER 15
DEBTORS**

17

# Exhibit "A"

| | |
|---|---|
| COURT FILE NUMBER | 1601 - 03143 |
| COURT | COURT OF QUEEN'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | CALGARY |

*FILED SEP 28 2016 — JUDICIAL CENTRE OF CALGARY — CLERK OF THE COURT*

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, as amended

AND IN THE MATTER OF THE COMPROMISE OR ARRANGEMENT OF SANJEL CORPORATION, SANJEL CANADA LTD., TERRACOR GROUP LTD., SURETECH GROUP LTD., SURETECH COMPLETIONS CANADA LTD., SANJEL ENERGY SERVICES (USA) INC., SANJEL (USA) INC., SURETECH COMPLETIONS (USA) INC., SANJEL CAPITAL (USA) INC., TERRACOR (USA) INC., TERRACOR RESOURCES (USA) INC., TERRACOR LOGISTICS (USA) INC., SANJEL MIDDLE EAST LTD., SANJEL LATIN AMERICA LIMITED and SANJEL ENERGY SERVICES DMCC

*I hereby certify this to be a true copy of the original Order*
*Dated this 28 day of Sept 2016*
*for Clerk of the Court*

| | |
|---|---|
| DOCUMENT | APPROVAL AND VESTING ORDER |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | BENNETT JONES LLP<br>Barristers and Solicitors<br>4500, 855 – 2nd Street S.W.<br>Calgary, Alberta T2P 4K7<br><br>Attention: Chris Simard<br>Tel No.: 403-298-4485<br>Fax No.: 403-265-7219<br>Client File No. 22681-375 |

DATE ON WHICH ORDER WAS PRONOUNCED:     September 28, 2016

LOCATION WHERE ORDER WAS PRONOUNCED:  Calgary Courts Centre

NAME OF JUSTICE WHO MADE THIS ORDER:    Justice B.E. Romaine

16-50778-cag  Doc#528  Filed 10/13/16  Entered 10/13/16 14:51:16  Main Document Pg 20 of
16-50778-cag  Doc#484-1  Filed 09/29/16  Entered 09/29/16 15:34:52  Exhibit A Pg 3 of 11

2

UPON THE APPLICATION by Sanjel Corporation, Sanjel Canada Ltd., Terracor Group Ltd., Suretech Group Ltd., Suretech Completions Canada Ltd., Sanjel Energy Services (USA) Inc., Sanjel (USA) Inc., Suretech Completions (USA) Inc., Sanjel Capital (USA) Inc., Terracor (USA) Inc., Terracor Resources (USA) Inc., Terracor Logistics (USA) Inc., Sanjel Middle East Ltd., Sanjel Latin America Limited and  Sanjel Energy Services DMCC (individually, a "**Sanjel Entity**", and collectively, "**Sanjel**") for an order approving the sale transaction (the "**Transaction**") contemplated by an agreement of purchase and sale (the "**Sale Agreement**") between Terracor (USA) Inc., Terracor Resources (USA) Inc., Terracor Logistics (USA) Inc., Terracor Group Ltd., Sanjel Corporation and Sanjel Canada Ltd. (collectively, the "**Vendors**") and Omnitrax Logistics Services, LLC (the "**Purchaser**") dated September 1, 2016, a redacted copy of which is attached as Exhibit "1" to the Affidavit No. 11 of Paul Crilly, sworn September 20, 2016 (the "**Crilly Affidavit No. 11**"), and vesting in the Purchaser (or its nominee) the Vendors' right, title and interest in and to the assets described in the Sale Agreement (the "**Purchased Assets**");

AND UPON HAVING READ the Crilly Affidavit No. 11 and the Confidential Affidavit No. 2 of Paul Crilly, sworn September 20, 2016 (the "**Confidential Affidavit No. 2**"), the Reports filed by the Court-appointed Monitor, PricewaterhouseCoopers Inc. (the "**Monitor**") and the Confidential Supplements to the Monitor's Reports and all other material and evidence filed to date in the within proceedings; AND UPON HEARING the submissions of counsel for Vendors, the Purchaser and other interested parties;

IT IS HEREBY ORDERED AND DECLARED THAT:

SERVICE

1.  Service of notice of this application and supporting materials is hereby declared to be good and sufficient, and no other person is required to have been served with notice of this application, and time for service of this application is abridged to that actually given.

2.  Unless otherwise defined in this Order, all capitalized terms used in this Order shall have the meanings given to them in the Sale Agreement.

## APPROVAL OF TRANSACTIONS

3.    The Sale Agreement, including the Transaction contemplated thereby, is found to be in the best interests of the Vendors, its creditors and its other stakeholders, and therefore the Sale Agreement and the Transaction contemplated thereby is hereby authorized, ratified, deemed commercially reasonable and approved. The Vendors are hereby authorized and directed to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transaction or for the conveyance of the Purchased Assets to the Purchaser (or its nominee).

4.    The Vendors and the Monitor are authorized and directed to take all such steps, perform, consummate, implement, execute and deliver all such conveyance documents, bills of sale, assignments, conveyances, transfers, deeds, representations, indicia of title, tax elections, documents and instruments of whatsoever nature or kind as may be reasonably necessary or desirable to consummate the Transaction in accordance with the term of the Sale Agreement, including, without limitation, making such amendments as the Vendors, the Monitor and the Purchaser may approve in writing and which do not materially alter the Sale Agreement.

5.    In the event the Vendors fail to take any step or execute any document reasonably necessary or desirable to consummate the Transaction, the Monitor is authorized and directed to take such step or execute any such document on the Vendors' behalf.

## VESTING OF PROPERTY

6.    Upon the delivery of a Monitor's certificate to the Purchaser (or its nominee) substantially in the form and substance set out in **Schedule "A"** hereto (the **"Monitor's Certificate"**), all of the Vendors' right, title and interest in and to the Purchased Assets described in the Sale Agreement shall vest absolutely in the name of the Purchaser (or its nominee), free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, caveats, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, encumbrances, other financial or monetary claims, or interests, whether or not they have attached or been perfected,

4

registered or filed and whether secured, unsecured or otherwise, and whether by payment, set off or otherwise (collectively, the **"Claims"**) including, without limiting the generality of the foregoing:

(a)     any encumbrances or charges created by the Initial Order granted herein on April 4, 2016 or subsequent Orders in the within CCAA proceedings; and

(b)     all charges, security interests or claims against the Purchased Assets, whether evidenced by registrations pursuant to the *Personal Property Security Act* (Alberta), the *Uniform Commercial Code* (United States) or any other personal property registry system;

(all of which are collectively referred to as the "Encumbrances", which term shall not include the Permitted Encumbrances as defined in the Sale Agreement). For greater certainty, this Court orders that all of the Encumbrances affecting or relating to the Purchased Assets and all charges, security interests or Claims evidenced by registrations under any personal property registry system or otherwise where any Claim of any kind may be registered or recorded are hereby expunged, ordered removed and otherwise unconditionally discharged and terminated as against the Purchased Assets.

7.     The Vendors and the Monitor are each authorized and directed to take all necessary steps and execute and all documents to effect any and all discharges and the registrars and all other persons in control or otherwise supervising such offices of registration or recording shall forthwith remove and discharge all such registrations.

8.     The Purchaser is authorized and directed to file, register or otherwise record a certified copy of this Order and the Monitor's Certificate with the appropriate filing office, agency, clerk(s) and/or recorder(s), which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the sale of the Purchased Assets free and clear from any and all Claims, including the release of all liens, claims, encumbrances and interests in the Purchased Assets as of the Closing Date of any kind or nature whatsoever.

5

9.  The Purchaser (and its nominee, if any) shall, by virtue of the completion of the Transaction, have no liability of any kind whatsoever in respect of any Claims against the Vendors.

10. The Vendors and all persons who claim by, through or under the Vendors in respect of the Purchased Assets, shall stand absolutely barred and foreclosed from all estate, right, title, interest, royalty, rental and equity of redemption of the Purchased Assets and, to the extent that any such persons remains in possession or control of any of the Purchased Assets, they shall forthwith deliver possession thereof to the Purchaser (or its nominee).

11. The Purchaser (or its nominee) shall be entitled to enter into and upon, hold and enjoy the Purchased Assets for its own use and benefit without any interference of or by the Vendors, or any person claiming by or through or against the Vendors.

12. The Purchaser shall be authorized, as of the Closing, to operate under any Governmental Authority, license, permit, registration and authorization or approval of or given to the Vendors with respect to the Purchased Assets, and all such licenses, permits, registrations and authorizations and approvals shall be and shall be deemed to have been transferred to the Purchaser as of the Closing.

13. The Monitor is to file with the Court a copy of the Monitor's Certificate, forthwith after delivery thereof to the Purchaser (or its nominee).

14. Pursuant to clause 7(3)(c) of the Canada *Personal Information Protection and Electronic Documents Act* and section 20(e) of the Alberta *Personal Information Protection Act*, the Vendors are authorized and permitted to disclose and transfer to the Purchaser (or its nominee) all human resources and payroll information pertaining to its past and current employees, including personal information of those employees listed in the Sale Agreement. The Purchaser (or its nominee) shall maintain and protect the privacy of such information and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Vendors.

**HANDLING OF NET PROCEEDS**

WSLEGAL\022681\00375\16860367v4

6

15. The Monitor shall hold the proceeds received from the Purchaser pursuant to the Sale Agreement, less completion costs and other usual completion costs incurred (the "**Net Proceeds**") pursuant to and in accordance with the terms of this Order.

16. The Net Proceeds shall stand in the place and stead of the Purchased Assets, and from and after the delivery of the Monitor's Certificate all Claims shall attach to the Net Proceeds with the same priority as they had with respect to the Purchased Assets immediately prior to the sale, as if the Purchased Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale.

17. Unless otherwise authorized by this Order, the Monitor shall make no distributions from the Net Proceeds except by further Order of this Court.

18. Notwithstanding:

    (a) the pendency of these proceedings and the declaration of insolvency made herein;

    (b) the pendency of any petition for receiving orders or bankruptcy orders now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* (Canada) in respect of any Sanjel Entity, any receiving orders issued pursuant to any such petitions or any assignments in bankruptcy which may hereafter be made by or with respect to any Sanjel Entity;

    (c) any assignment in bankruptcy made in respect of any Sanjel Entity; and

    (d) the provisions of any federal, provincial or state statute:

    the assignment, transfer, conveyance and vesting of the Vendors' right, title, estate and interest in and to the Purchased Assets in the Purchaser (or its nominee) pursuant to this Order shall be binding on any trustee in bankruptcy that may be appointed in respect of any Sanjel Entity and shall not be void or voidable by creditors of any Sanjel Entity, nor shall it constitute nor be deemed to be a settlement, fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transaction under the *Bankruptcy and Insolvency Act* (Canada) or any other applicable federal or provincial

7

legislation, nor shall it constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

19. The Monitor, the Vendors, and the Purchaser (or its nominee) shall be at liberty to apply for further advice, assistance and directions as may be necessary in order to give full force and effect to the terms of this Order and to assist and aid the parties in closing the Transaction.

## MISCELLANEOUS MATTERS

20. This Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States to give effect to this Order and to assist the Vendors, the Monitor and their agents in carrying out the terms of this Order. All courts, tribunals regulatory and administrative bodies are hereby respectfully requested to make such orders as to provide such assistance to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Vendors, the Monitor and their agents in carrying out the terms of this Order.

21. This Order must be served only upon those interested parties attending or represented at the within application and service may be effected by facsimile, electronic mail, personal delivery or courier. Service is deemed to be effected the next business day following the transmission or delivery of such documents.

22. Service of this Order on any party not attending this application is hereby dispensed with.

_____

J.C.C.Q.B.A.

Schedule "A"

Form of Monitor's Certificate

| | | |
|---|---|---|
| COURT FILE NUMBER | 1601 – 03143 | |
| COURT | COURT OF QUEEN'S BENCH OF ALBERTA | Clerk's Stamp |
| JUDICIAL CENTRE | CALGARY | |

IN THE MATTER OF THE *COMPANIES'
CREDITORS ARRANGEMENT ACT*, R.S.C. 1985,
c. C-36, as amended

AND IN THE MATTER OF THE COMPROMISE
OR ARRANGEMENT OF SANJEL
CORPORATION, SANJEL CANADA LTD.,
TERRACOR GROUP LTD., SURETECH GROUP
LTD., SURETECH COMPLETIONS CANADA
LTD., SANJEL ENERGY SERVICES (USA) INC.,
SANJEL (USA) INC., SURETECH
COMPLETIONS (USA) INC., SANJEL CAPITAL
(USA) INC., TERRACOR (USA) INC.,
TERRACOR RESOURCES (USA) INC.,
TERRACOR LOGISTICS (USA) INC., SANJEL
MIDDLE EAST LTD., SANJEL LATIN AMERICA
LIMITED and SANJEL ENERGY SERVICES
DMCC

DOCUMENT                    **MONITOR'S CERTIFICATE**

ADDRESS FOR SERVICE      **BORDEN LADNER GERVAIS LLP**
AND                      Barristers and Solicitors
CONTACT INFORMATION      1900, 520 – 3rd Avenue S.W.
OF                       Calgary, Alberta T2P 0R3
PARTY FILING THIS
DOCUMENT                 Attention: Josef Kruger, Q.C.
                         Tel No.: 403-232-9563
                         Fax No.: 403-266-1395

WSLEGAL\022681\00375\16860367v4

2

## RECITALS

A.  Pursuant to an Order of the Honourable Justice B. E. Romaine of the Court of Queen's Bench of Alberta, Judicial District of Calgary (the "**Court**") dated April 4, 2016, PricewaterhouseCoopers Inc. was appointed as the monitor (the "**Monitor**") of Terracor (USA) Inc., Terracor Resources (USA) Inc., Terracor Logistics (USA) Inc., Terracor Group Ltd., Sanjel Corporation and Sanjel Canada Ltd. (collectively, the "**Vendors**").

B.  Pursuant to an Order of the Court dated September 28, 2016, the Court approved the agreement of purchase and sale made as of September 1, 2016 (the "**Sale Agreement**") between the Vendors and **OMNITRAX LOGISTICS SERVICES, LLC** (the "**Purchaser**") and provided for the vesting in the Purchaser of the Vendors' right, title and interest in and to the Purchased Assets, which vesting is to be effective with respect to the Purchased Assets upon the delivery by the Monitor to the Purchaser of a certificate confirming: (i) the payment by the Purchaser (or its nominee) of the Purchase Price for the Purchased Assets; (ii) that the conditions to Closing as set out in sections 7.1, 7.2 and 7.3 of the Sale Agreement have been satisfied or waived by the Vendors and the Purchaser; and (iii) the Transaction has been completed to the satisfaction of the Monitor.

C.  Unless otherwise indicated herein, terms with initial capitals have the meanings set out in the Sale Agreement.

**THE MONITOR CERTIFIES** the following:

1.  The Purchaser has paid and the Monitor has received the Closing Cash Payment for the Purchased Assets payable on the Closing Date pursuant to the Sale Agreement.

2.  The Vendors and the Purchaser have each delivered to the Monitor the Conditions Certificate evidencing that all applicable conditions under the Sale Agreement have been satisfied and/or waived, as applicable.

WSLEGAL\022681\00375\16860367v4

3

3.  This Certificate was delivered by the Monitor at _____ p.m. on _____, 2016.

PricewaterhouseCoopers Inc., in its capacity as Court-appointed Monitor of the undertaking, property and assets of the Vendors, and not in its personal capacity.

Per: _____

Name:

Title:

WSLEGAL\022681\00375\16860367v4